The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on March 14, 2023, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: March 14, 2023**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JAMES G. WEAVER, JR., | ) | Case No. 18-14771 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

## MEMORANDUM OF OPINION[1]

This matter is before the Court on the chapter 13 trustee's and the debtor's competing motions to modify the debtor's confirmed plan under 11 U.S.C. § 1329. The chapter 13 trustee argues that the debtor's income has increased, and therefore his monthly plan payment should increase from $3,918.56 to $7,001.56. The debtor counters that his expenses have outpaced his increased income, and therefore the Court should reduce his plan payment. For the reasons that follow,

_____

[1] This Opinion is not intended for official publication.

the Court denies the debtor's motion to modify and denies in part and grants in part the chapter 13 trustee's motion to modify.

JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7, entered by the United States District Court for the Northern District of Ohio.

PROCEDURAL HISTORY

On August 7, 2018, the debtor filed this chapter 13 case. He previously filed two other cases in this Court: a chapter 7 case (Case No. 14-10041) filed on January 4, 2014, for which the debtor received a discharge on May 7, 2014; and a chapter 13 case (Case No. 14-17176) filed on November 12, 2014, which the Court dismissed on May 22, 2018, for the debtor's failure to fund his confirmed plan.

On June 25, 2019, the Court confirmed the debtor's plan in this case and ordered a monthly plan payment of $3,117.00 for 15 months and then $3,886.39 for 45 months (Docket No. 84). Under the plan, the chapter 13 trustee would directly pay the mortgage for the debtor's Cleveland house. The mortgage payment was initially $1,830.44 and later increased to $1,875.91 (with a corresponding increase to the plan payment) (Docket No. 110). On October 31,

2

2019, the debtor filed a motion to modify his plan, citing an incorrect domestic support obligation payment (Docket No. 88). The chapter 13 trustee opposed the motion (Docket No. 91), and the debtor withdrew it on November 26, 2019 (Docket No. 94).

On June 16, 2020, the chapter 13 trustee filed her own motion to modify the debtor's plan, arguing the debtor's income increased and his monthly plan payment should be increased to $6,200—an amount sufficient to pay unsecured creditors a 100 percent dividend (Docket No. 97). The debtor opposed the increase (Docket No. 99). On November 10, 2020, the chapter 13 trustee withdrew her motion (Docket No. 103). On November 23, 2021, the chapter 13 trustee filed a motion to dismiss the debtor's case for the debtor's failure to provide federal income tax returns and other documents (Docket No. 115), but the trustee withdrew this motion before the Court held a hearing (Docket No. 118).

On March 2, 2022, the chapter 13 trustee filed the motion to modify that is the subject of this opinion and again sought to increase the plan payment to pay unsecured creditors a 100 percent dividend (Docket No. 123). The debtor filed a response in opposition (Docket No. 127). The Court held and adjourned a hearing on the trustee's motion four times at both parties' request. Meanwhile, on August 19, 2022, the debtor filed amended Schedules I and J (Docket No. 129),

3

showing an income of $11,002.54 and expenses of $9,703.01.  On October 14,

2022, the Court scheduled the trustee's motion to modify for an evidentiary

hearing on December 16, 2022 (Docket No. 130).

The Court ordered the parties to complete all discovery by November 18,

2022 (Docket No. 130).  On October 25, 2022, the chapter 13 trustee filed a motion

requesting until November 25, 2022, to complete discovery, which the Court

granted (Docket Nos. 132 and 133).  On December 7, 2022, the trustee filed a

motion in limine asking the Court to preclude the debtor "from calling and using at

the time of trial the testimony of any fact witness or expert witness or presenting

any evidence" (Docket No. 135).  That same day, the debtor filed a motion to

continue the evidentiary hearing because he and his counsel were "unable to

prepare for and secure attendance" at the scheduled evidentiary hearing (Docket

No. 136).  The trustee opposed the debtor's request for a continuance (Docket

No. 137).  The debtor also filed a response to the trustee's motion in limine

(Docket No. 142).

On December 13, 2022, the Court held a hearing on the trustee's motion in

limine and the debtor's request for a continuance.  The Court ordered the debtor to

provide more complete responses to the chapter 13 trustee's discovery requests by

December 27, 2022, and the Court continued the evidentiary hearing until

4

January 20, 2023 (Docket No 144).  With the parties' consent, the Court also reserved the right to modify the debtor's chapter 13 plan with an increased payment less than what the trustee requested in her motion.

On December 28, 2022, the debtor filed his own motion to modify (Docket No. 147), which the chapter 13 trustee opposed (Docket No. 152).  The debtor's motion requested an unspecified reduction to his plan payment because of a "significant increase in his household expenses."  The debtor consented to the Court determining the appropriate monthly amount in conjunction with the hearing on the trustee's motion to modify.

On January 16, 2023, the debtor filed another motion to continue the evidentiary hearing then scheduled for January 20, 2023 (Docket No. 153).  This time, the debtor explained that the debtor's counsel was in quarantine due to COVID-19 and the debtor was "not comfortable appearing with counsel."  The debtor also complained of the "significant expense" he would incur to travel from his home in Miami, Florida, to Cleveland for the hearing.  Lastly, the debtor consented to the Court determining an appropriate plan payment "retroactive" to the date the chapter 13 trustee initially filed her motion to modify, March 2, 2022.  On January 17, 2023, the trustee opposed the debtor's motion for a continuance and renewed her motion in limine (Docket No. 155).

5

Also on January 17, 2023, the chapter 13 trustee filed a motion to dismiss the debtor's case because the debtor was delinquent on his plan payments in the amount of $6,817.52 (Docket No. 156). On this same date, the debtor filed amended Schedules I and J (Docket No. 158). As the debtor filed these after the discovery period closed, the Court did not consider them as evidence in this opinion.

On January 19, 2023, the Court held a hearing on the debtor's motion to continue the evidentiary hearing and on the trustee's motion to dismiss this case. The Court granted the debtor's motion to continue the hearing and adjourned the motion to dismiss to February 2, 2023 (Docket No. 162). At the February 2, 2023, hearing, the trustee reported that the debtor had become current on his plan payments and withdrew her motion to dismiss (Docket No. 170). On February 6, 2023, the Court entered an order deeming the debtor current on his plan payments through February 7, 2023 (Docket No. 169). Lastly, the Court continued the evidentiary hearing to February 17, 2023 (Docket No. 167).

On February 10, 2023, the debtor filed a motion requesting that the Court permit the debtor to appear remotely for examination at the evidentiary hearing (Docket No. 173). On February 14, 2023, the Court held a hearing and denied the debtor's motion.

6

On February 17, 2023, the Court held the evidentiary hearing on the parties' competing motions to modify. During the chapter 13 trustee's case-in-chief, the Court heard testimony from Rebecca Conway, a case analyst for the chapter 13 trustee. The debtor did not call any witnesses during his case-in-chief, and the debtor did not appear at the hearing. The Court received the trustee's exhibits 1 through 15 and 19 without objection and exhibit 18 over the debtor's objection. The Court also received the debtor's exhibits A and C without objection and exhibit D over the trustee's objection. Lastly, the Court took judicial notice of the debtor's move to Atlanta, Georgia, on February 2, 2020; his move to Miami, Florida, on March 28, 2022; the birth of the debtor's child on September 22, 2022; and the death of the debtor's grandmother on October 25, 2022.

During its initial review of the evidence, the Court had questions about two exhibits that the chapter 13 trustee offered and the Court received without objection. These exhibits appeared to show capital asset sales in excess of $5.6 million and $3.2 million in 2020 and 2021, respectively. The Court granted the parties leave to supplement the record with an explanation for these transactions, but neither party submitted additional information (Docket No. 176).

FACTUAL HISTORY

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of the witness. In doing so, "the [C]ourt considered the [witness's] demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of the hearing witness and the exhibits admitted into evidence. Unless otherwise indicated, the following facts were established at the evidentiary hearing by a preponderance of the evidence.

Since filing this chapter 13 case on August 7, 2018, the debtor has worked for United Parcel Service ("UPS"). The debtor's income at UPS has substantially increased since the start of the case. According to the debtor's Schedule I submitted in September of 2018, the debtor earned a gross monthly salary from UPS of $7,676.01 (Docket No. 22). This increased to $10,967.28 per month in July of 2020 (Docket No. 100). And it increased again to $13,246.07 in 2022 based on the debtor's 2022 W-2 (Ex. A).

8

The debtor also owns a consulting company, "Trinity of Life Consulting and Management LLC." In his Schedule Is, the debtor claimed the company made $369 per month in 2018, nothing in 2020, and $1,285.83 per month in 2022 (Docket Nos. 22, 100, and 129). The debtor's federal income tax returns tell a somewhat different story. The debtor's 2019 tax return indicates the company had $4,949 in gross receipts but had a net loss of $6,583 for the year (Ex. 7). The 2020 tax return lists gross receipts of $76,360 and a net profit of $2,071 (Ex. 10). In 2021, the company's gross receipts were $50,383 with a net loss of $3,940 (Ex. 13). The chapter 13 trustee argued the Court should use the company's gross receipts to calculate the debtor's income as the net income subtracts expenses the debtor already claimed in his Schedule Js. The Court somewhat agrees. As the Court further explains below, some expenses are, in effect, double-counted, while others appear only to pertain to the debtor's business. Neither party offered evidence of the company's actual earnings in 2022, so the Court used the debtor's 2021 tax return to estimate the debtor's 2022 business income. As shown below, the Court finds the debtor's monthly business income for 2022 to be approximately $1,300.

While the debtor's income has generally increased, there is at least some evidence to suggest his expenses have increased as well. Sometime in early 2020,

9

the debtor moved from Cleveland to Atlanta. After his move, he began renting his house in Cleveland. In early 2022, the debtor moved again, this time from Atlanta to Miami. On September 22, 2022, the debtor's wife gave birth to a child. And, on October 25, 2022, the debtor's grandmother died. Other than these dates and associated events, the Court received no evidence of how these events affected the debtor's expenses.

## CONCLUSIONS OF LAW

11 U.S.C. § 1329 governs postconfirmation plan modification. It allows, in part, for the "the debtor, the trustee, or the holder of an allowed unsecured claim" to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a). Section 1329(b)(1) specifies that only "[s]ections 1322(a), 1322(b), and 1323(c) of [Title 11] and the requirements of section 1325(a) . . . apply to any plan modification under" section 1329(a). Under section 1329(b)(2), the modified plan, if approved, "becomes the plan." Bankruptcy Rule 3015(g) requires that a motion to modify under section 1329 "be filed together with the proposed modification."

The proponent of a modification bears the burden of proof. *E.g., In re Nenadal*, No. 19-62395, 2022 WL 2294040, at *2 (Bankr. N.D. Ohio June 23, 2022) (citing *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 434 (B.A.P.

10

9th Cir. 1997)).  In large part, this means the proponent must prove by a preponderance of the evidence that the plan is proposed in good faith under section 1325(a)(3) and that it is feasible under section 1325(a)(6).  11 U.S.C. § 1329(b)(1).  To determine good faith, a court must consider the totality of the circumstances, including at least a dozen specific circumstances.  *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002).  Feasibility simply means the debtor is "able to make all payments under the plan and comply with the plan." 11 U.S.C. § 1325(6).  At the very least, this means the debtor's income exceeds his expenses by enough to make the plan payments.  *In re Martin*, No. 10-64790, 2013 WL 6196566, at *3 (Bankr. N.D. Ohio Nov. 27, 2013) (quoting *In re Morris*, 2012 WL 2341537, at *9 (Bankr. S.D. Cal. 2012)).

Because section 1325(b) does not apply to a plan modification, the "projected disposable income" test of section 1325(b) does not apply.  11 U.S.C. § 1329(b)(1); *see also In re Williams*, No. DL 18-00179, 2020 WL 5753318, at *2 (Bankr. W.D. Mich. Sept. 24, 2020) (citing cases and concluding that "the weight of persuasive authority" holds that section 1325(b) does not apply to plan a modification under section 1329).  Instead, the plan modification must be "based on the debtor's actual income and expenses at the time of the proposed

11

modification." *In re Martin*, 2013 WL 6196566, at *4 (citing *In re Crim*, 445 B.R. 868, 871 (Bankr. M.D. Tenn. 2011)).

Lastly, some courts require the proponent of a plan modification to show a change in a debtor's circumstances as a prerequisite to modification. *See, e.g., Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994). The Sixth Circuit Bankruptcy Appellate Panel rejected this requirement in *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 195 (B.A.P. 6th Cir. 1998). *See also In re Breeden*, 304 B.R. 318, 323 (Bankr. N.D. Ohio 2003). Even so, a debtor's changed circumstances are a factor for a court to consider when determining whether to approve a motion to modify. *In re Brown*, 219 B.R. at 195.

### 1. The Debtor's Motion

As stated above, a debtor seeking to modify his plan must file his motion "together with the proposed modification." Fed. R. Bankr. P. 3015(g). On December 28, 2022, the debtor filed his motion to modify. He requested that the Court "reduce his plan payments" but did not specify a dollar amount or otherwise provide any specific description of the "proposed modification." The chapter 13 trustee never raised this procedural error. During closing argument at the evidentiary hearing, the debtor's attorney ultimately provided the Court a specific dollar amount for his proposed monthly plan payment: $3,100.

Putting aside this procedural error, the debtor also bore the burden of proving his proposed modification. The debtor and the chapter 13 trustee generally agree that the debtor's income has increased since the Court confirmed the debtor's plan. They disagree, however, on whether the debtor's expenses have increased and, if so, by how much. The debtor's motion posits that the increase in his expenses has outpaced his increased income. Accordingly, the debtor had the burden to prove this with evidence at the evidentiary hearing. In other words, the debtor had to provide evidence of his actual expenses to justify the lower monthly plan payment.

The Court took judicial notice of the death of the debtor's grandmother and the birth of his child in 2022. During the course of this case, the debtor moved from Cleveland to Atlanta and then from Atlanta to Miami. The debtor, however, provided no evidence of how these events resulted in an increase in his expenses to justify reducing his monthly plan payment to $3,100. The debtor chose not to participate in the evidentiary hearing, thereby limiting his counsel's ability to present a case in support of his motion. The Court can speculate how the changes in the debtor's life could result in increased expenses, but such speculation is not evidence. The debtor therefore failed to meet his burden of proof. Accordingly, the Court denies the debtor's motion to modify his confirmed plan.

13

## 2. The Chapter 13 Trustee's Motion

The chapter 13 trustee likewise bore the burden of proving that the debtor's income and expenses supported increasing the debtor's monthly plan payment to $7,001.56—an amount needed to pay a 100 percent dividend to general unsecured creditors. The Court received extensive evidence of the debtor's increased income. Based on the debtor's 2022 W-2 (Ex. A), the Court calculated his net monthly income from UPS to be $9,850.67 per month for 2022. The Court did not consider the deduction on the debtor's W-2 for his health savings account as it appears to duplicate the $650 per month expense for "Medical and dental expenses" the debtor claimed in his August 19, 2022, Schedule J. *See, e.g., In re Maura*, 491 B.R. 493, 509 (Bankr. E.D. Mich. 2013) (finding deduction for health savings account "impermissibly duplicates" expense claimed for out-of-pocket health care expenses).

Turning to the debtor's consulting business, neither party offered any evidence of the business's actual income in 2022. So the Court projected its income for 2022 based on the debtor's federal tax returns from 2021 (Ex. 13). The case analyst for the chapter 13 trustee testified that her office used the business's gross receipts—$50,383 for 2021—to calculate the debtor's business income. She explained that the net business income on the debtor's 2021 tax return subtracts

14

expenses that the debtor already accounted for as expenses on his Schedule J. The Court partially agrees. Some expenses on the tax return appear to pertain exclusively to the debtor's business, such as "Advertising" and "Commissions and fees." Others are likely duplicates of expenses in the debtor's Schedule J, for example "Deductible meals" and "Car and truck expenses." Using its best judgment, the Court finds the following expenses, which total approximately $35,000, are only for the debtor's business: "Advertising," "Commissions and fees," "Contract labor," "Depreciation," "Insurance," "Legal and professional services," "Office expense," "Other business property," "Supplies," "Travel," and "Other expenses." Subtracting these expenses from the gross receipts of $50,383 results in a net income of approximately $15,600 or $1,300 per month.

Adding the debtor's business income to his UPS income results in a combined monthly income of $11,150.67 for 2022. The Court notes that this amount is close to the debtor's August 19, 2022, Schedule I combined monthly income of $11,002.54. Although the Court did not consider the debtor's January 17, 2023, Schedule I, its combined monthly income of $11,166.12 is even closer to the Court's calculation.

Finally, the parties dispute what income is (or should be) calculated from the debtor's rental property in Cleveland. In closing argument, the debtor's attorney

15

stated that the debtor is only renting a portion of his Cleveland house so that he can use one or more rooms while he is visiting the city. As such, the monthly rental income is $600 and covers only a portion of the $1,875.91 per month mortgage payment. The debtor's attorney also conceded in argument, however, that the rental income and mortgage payment should be "a wash"—meaning the rental income should cover the mortgage payment. On July 29, 2020, after his move to Atlanta, the debtor submitted Schedules I and J that appear to reflect this. The Schedule I listed no rental income and the Schedule J did not include the mortgage payment for the debtor's Cleveland house. It only accounted for the debtor's rent in Atlanta. Moreover, the debtor twice requested to continue the evidentiary hearing and later to testify remotely in part because of the expense associated with traveling from Miami to Cleveland for the hearing. The debtor cannot both choose to rent only part of his Cleveland house so that it is available for his own use and then not use that available space to defray the cost of attending his bankruptcy hearing. The Court will therefore calculate the debtor's rental income to equal his mortgage payment of $1,875.91.

In her closing argument, the attorney for the chapter 13 trustee identified six expenses that she disputes on the debtor's August 18, 2022, Schedule J. These are the debtor's monthly payments for (1) life insurance ($339), (2) long-term care

16

insurance ($168), (3) life insurance for the debtor's children ($150), (4) rent for a storage unit ($721.01), (5) payments of alimony, maintenance, and support not reported on Schedule I ($650), and (6) travel for visitation with children ($350). The Court adds a seventh that the debtor conceded should be reduced in his closing argument: charitable contributions ($500).

The Court finds the evidence supports the reduction or elimination of six of these expenses: long-term care insurance, life insurance for the debtor's children, rent for a storage unit, payments of alimony, etc. not reported on Schedule I (what the Court will call "other support payments"), travel for visitation with children, and charitable contributions.

First, the debtor scheduled for the first time on August 18, 2022, $168 per month for long-term care insurance and $150 for his children's life insurance. These expenses are entirely new, and the Court has no evidence establishing why they are now necessary more than four years after the debtor filed his case. The debtor has been paying for life insurance on his own life since at least July of 2020. Although the cost has increased from $85 per month in July of 2020 to $339 per month in August of 2022, the chapter 13 trustee presented no evidence for the Court to question this increase. Therefore, the Court eliminates the expenses for

17

long-term care insurance and children's life insurance but maintains the debtor's life insurance expense at the amount he scheduled.

Second, the debtor claims a monthly payment of $721.01 for a storage unit. At the start of his case, the debtor scheduled $1,500 of "Misc. household goods and furniture" (Docket No. 1). Storing $1,500 worth of household goods and furniture cannot justify a $721.01 monthly payment for a storage unit. The inconsistency of the debtor's own schedules negates this expense. The Court therefore eliminates the storage unit expense.

Third, since initially filing his case, the debtor has scheduled $340 in other support payments (Docket Nos. 22 and 100). In his August 18, 2022, Schedule J, this expense inexplicably rose to $650 (Docket No. 129). On this same Schedule J, there also appeared for the first time $275 for "Children's school fees & books" and $200 for "Baby pre-birth expenses." While a child's birth undoubtedly entails additional expenses, this appears to be an instance of the debtor duplicating expenses already accounted for elsewhere. The Court therefore finds the evidence supports a lower $340 expense for other support payments while maintaining the children's school fees and books and baby pre-birth expenses as the debtor scheduled.

18

Fourth, the debtor claims expenses of $350 per month to visit his children. Yet on this very same Schedule J, the debtor answered that he has two dependents—a son and a daughter both aged 21—and that both live with him. Again, the inconsistencies of the debtor's own schedule negate this expense. The debtor cannot both claim his children live with him while also claiming a $350 monthly expense to visit them. To the extent that the debtor's two adult children might be attending college away from home, the Court finds that the debtor has failed to establish the necessity or amount of the expense to visit them. Therefore, the Court eliminates this expense.

Fifth, the debtor's attorney largely conceded in closing argument that the evidence does not support a $500 per month charitable contribution deduction. The debtor's charitable contributions were $0 when he filed this case in August of 2018, increased to $50 in July of 2020, and then increased tenfold to $500 in August of 2022. Although the Court is not considering the debtor's Schedule J filed on January 17, 2023, it notes that the debtor claimed a charitable contribution of $25, and the Court finds this consistent with the debtor's contributions made throughout this case and an appropriate amount. Therefore, the Court reduces the debtor's monthly charitable contribution deduction to $25.

19

Lastly, the Court finds that starting February 3, 2023, the debtor's rent in Miami increased from $2,300 to $2,400 per month.

Overall, the debtor's expenses are a mix of expected cost of living increases, inconsistent claims, and new and unsupported costs. While the evidence conclusively establishes that the debtor's income has increased, evidence concerning his expenses is lacking. The trustee must do more than question the debtor's expenses; she has the burden to prove that the debtor can reasonably afford the increase in plan payments being sought in the modified plan. Moreover, at least in the context of a motion to modify under 11 U.S.C. § 1329, the Court has no concrete standard to apply when examining the debtor's expenses. *See In re Martin*, 2013 WL 6196566, at *7 (stating a Court has a duty to ensure a debtor's expenses are reasonable and that the Court's "own knowledge and experience are important" in that task).

What is clear, however, is that as of January 31, 2023, none of the debtor's general unsecured creditors have received any of the approximately $15,000 due to them under section 5.1 of the debtor's confirmed plan (Docket No. 178). The Court cannot permit the debtor's expenses to increase more than the evidence and common sense allow. As Judge Kendig observed in a slightly different context: while there is nothing per se wrong with certain discretionary expenses, "[t]here is

20

something wrong when these expenses continue and unpaid creditors are told by the bankruptcy court to shinny up a cactus." *In re Mooney*, 313 B.R. 709, 716 (Bankr. N.D. Ohio 2004).  In the present case, while some increase in expenses is expected, what the debtor is claiming is not.  Taking into account the above adjustments, the Court calculates the debtor's monthly expenses to total $7,529.

Subtracting his expenses from his combined monthly income, the Court finds the debtor to have a monthly net income of $3,621.67.  This amount together with the conduit mortgage payment results in a monthly plan payment of $5,497.58—an increase of $1,579.02—retroactive to the date the chapter 13 trustee filed her motion to modify, March 2, 2022.  Starting on February 7, 2023, the monthly plan payment reduces to $5,397.58 to account for the debtor's $100 monthly rent increase in Miami.

The Actual Plan Modification

Bankruptcy Rule 3015(g) requires that a request to modify a confirmed plan be filed together with the proposed modification.  Although the trustee did not file a proposed modified plan, the motion did specify that the trustee was seeking: (1) an increase of plan payments to $7,001.56 per month, presumably in section 2.1 of the confirmed plan, and (2) a 100 percent dividend to general unsecured creditors, presumably in the second box of section 5.1 of the confirmed plan.  As

21

previously noted, the debtor consented to the Court entering a modification
retroactive to the date the trustee filed her motion and for an amount less than what
the trustee sought.

The Court finds that the chapter 13 trustee has established by a
preponderance of the evidence the elements required for a plan modification under
section 1329 that increases plan payments by $1,579.02 per month effective with
the payment due on March 7, 2022, through the payment due on January 7, 2023,
and by $1,479.02 per month effective with the payment due on February 7, 2023,
through the final monthly plan payment due on August 7, 2023.

Accordingly, the Court modifies the debtor's confirmed plan by
interlineating the following in sections 2.1 and 5.1:

- The debtor's monthly plan payment effective with the payment due
  on March 7, 2022, through the monthly payment due on January 7,
  2023, is $5,497.58;

- The debtor's monthly plan payment effective with the payment due
  on February 7, 2023, through the final payment due on August 7,
  2023, is $5,397.58; and

- A check is added to the third box of section 5.1  This has the effect
  of making the dividend to unsecured creditors the greatest of:

  - $14,484.14 (the amount provided in the first checked box of
    section 5.1);

  - 16.96 percent of allowed nonpriority unsecured claims (the
    amount provided in the second checked box of section 5.1,

22

which the Court estimates to be 16.96 percent of $93,168.62 or $15,801.40); or

o The funds remaining after disbursements have been made to all other creditors provided for in this plan (the amount provided in the third checked box of section 5.1).

The exact amount available under the third checked box of section 5.1 will depend upon trustee fees and any attorney's fees awarded under section 330(a)(4)(B), which would be entitled to priority as an administrative expense under section 503(b)(2).

As for the increase in plan payments, the Court anticipates the amount to be $27,722.36 over the life of the plan: 11 payments of $1,579.02 from March 7, 2022, through January 7, 2023, or $17,369.22; plus 7 payments of $1,479.02 from February 7, 2023, through the final payment due on August 7, 2023, or $10,353.14; for a total of $27,722.36.

Put another way, going forward, the debtor must now make 5 regular payments of $5,397.58 per month starting with the payment due on April 7, 2023, as well as retroactive payments totaling $20,327.26 (11 payments of $1,579.02 from March 7, 2022, through January 7, 2023, plus 2 payments of $1,479.02 from February 7, 2023, through March 7, 2023). These figures assume no further adjustments in the debtor's conduit payments, and that the debtor was current with

23

the plan payments in effect before entry of this memorandum of opinion and accompanying order.

While the Court does not expect the debtor to pay immediately the increased payments now due for the period from March 7, 2022, through March 7, 2023, the Court reminds the debtor that failure to make payments required under a confirmed plan is cause for dismissal or conversion under section 1307(c), and that completion of all payments under the plan is required for the debtor to receive a discharge under section 1328(a).

## Additional Considerations

Exhibits 10 and 13 are the debtor's 2020 and 2021 federal tax returns, respectively. The Court alerted the parties to an unexplained and seemingly large amount of capital asset sales the debtor made in tax years 2020 and 2021. In 2020, these sales totaled $5,673,958 and resulted in an adjusted loss of $9,463. The included Form 8949 references an "ATTACHED NATIONAL FINANCIAL REPORT," but the exhibit has no such attachment. In 2021, the sales totaled $3,360,645 and resulted in an adjusted loss of $47,388. The Form 8949 in this tax return references an attached Fidelity Investments account statement. Again, no such account statement is in the exhibit. Perhaps more concerning, the debtor never disclosed an account with Fidelity Investments in any of his schedules.

24

Concerned over the rather large transactions and the lack of context concerning any of this information, the Court invited the parties to supplement the record with an explanation. Neither party provided one.

Section 1325(a)(3) requires that a plan (or a motion to modify a plan) be "proposed in good faith." In determining good faith, a Court must consider the totality of the circumstances, including a long list of non-exclusive factors. *In re Alt*, 305 F.3d at 419. Considering the same list of factors, a court may also dismiss or convert a debtor's case for bad faith under 11 U.S.C. § 1307(c). *Id*. The Supreme Court recognized that a debtor may act "in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets." *Marrama v. Citizens Bank*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107 (2007). In *Marrama*, the debtor acted in bad faith by fraudulently concealing a house in Maine with substantial value. *Id*. at 368. Because of this bad faith, the Supreme Court affirmed the denial of the debtor's motion to convert his chapter 7 case to chapter 13. *Id*. at 375. Fraudulently concealing an investment account with substantial value "in the course of" a chapter 13 case may similarly constitute bad faith and also justify dismissal or conversion under 11 U.S.C. § 1307(c). However, a motion to dismiss or convert the debtor's case is not before the Court.

25

Finally, the Court sets a deadline of April 14, 2023, for the debtor's attorney to file any supplemental request for attorney's fees for work performed through March 14, 2023. Without deciding the merits of any supplemental fee application that the debtor's attorney may file, the Court finds it appropriate to set a deadline for filing any such application. For example, if granted, any such application would likely be entitled to priority treatment as an administrative expense ahead of general unsecured claims and will likely affect the total available for the benefit of general unsecured creditors. The application should indicate whether the debtor has consented in writing to the amount requested. *See generally* Second Amended Administrative Order 07-2 at ¶ 8 (addressing procedures for seeking compensation for "novel, complex or non-routine matters").

## CONCLUSION

For the reasons stated above, the Court denies the debtor's motion to modify and denies in part and grants in part the chapter 13 trustee's motion to modify. The Court modifies the confirmed plan by interlineating the following in sections 2.1 and 5.1:

- The debtor's monthly plan payment effective with the payment due on March 7, 2022, through the monthly payment due on January 7, 2023, is $5,497.58;

- The debtor's monthly plan payment effective with the plan payment due on February 7, 2023, through the final payment due on August 7, 2023, is $5,397.58; and

- A check is added to the third box of section 5.1.

Additionally, the Court sets a deadline of April 14, 2023, for the debtor's attorney to file any supplemental request for attorney's fees for work performed through March 14, 2023.

IT IS SO ORDERED.